**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 11-cv-03044-RM-BNB

JUDY RIGG, as personal representative of the ESTATE OF ROBERT RIGG,

    Plaintiff,

v.

CITY OF LAKEWOOD,

    Defendant.

___

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
___

THIS MATTER is before the Court on Defendant City of Lakewood's Motion for Summary Judgment (ECF No. 76) (the "Motion"). Plaintiff Judy Rigg ("Plaintiff"), as personal representative of the Estate of Robert Rigg, brings this action pursuant to 42 U.S.C. § 1983, against Defendant City of Lakewood ("Defendant"). For the reasons set forth below, Defendant's Motion is GRANTED.

**I.    JURISDICTION AND LEGAL STANDARD**

This case is based on federal question jurisdiction pursuant to 42 U.S.C. § 1331, having been removed from state court. This Court has subject matter jurisdiction as Plaintiff's claim is made pursuant to 42 U.S.C. § 1983.

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine issue of material fact depends upon whether the

evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II.     PROCEDURAL HISTORY AND FACTS

***Procedural History***

Plaintiff, the widow and personal representative of the estate of Robert Rigg, filed her complaint in state court in September 2011, and it was removed to this court in November 2011. The complaint was filed by Ms. Rigg in both her personal capacity and as personal representative of Mr. Rigg's estate. Originally, the complaint alleged liability against multiple parties in connection with the death of Robert Rigg. Defendants filed a Motion to Dismiss on December 16, 2011 (ECF No. 13), and U.S. District Court Judge R. Brooke Jackson ruled on it by dismissing with prejudice Plaintiff's claims against the Lakewood Police Department and the Denver Police Department, and dismissing with prejudice the wrongful death claims against the City of Lakewood and the City and County of Denver. (ECF No. 25 at 5.) Additionally, the claim against the two municipalities under 42 U.S.C. § 1983 was dismissed without prejudice and with leave to amend. (*Id*.) The dismissal of the § 1983 claim was predicated upon the total failure to allege that the constitutional violation being advanced was pursuant to a custom or practice of the municipality.

A Motion for Reconsideration was filed asking for leave to amend without filing a new action, and Judge Jackson clarified via text only entry that "[t]he Court's intention was to permit plaintiffs to file an amended complaint in this case." (ECF No. 27.) Plaintiff, solely as personal representative, then filed an amended complaint asserting a § 1983 claim only against the City of Lakewood (ECF No. 29), Defendant filed an answer, and eventually an amended answer (ECF No. 39). Defendant filed two Motions to strike Plaintiff's experts (ECF Nos. 74, 75), and also the instant Motion for Summary Judgment (ECF No. 76).

*Facts*

The relevant facts, taken in the light most favorable to Plaintiff, are as follows: On September 9, 2009, at approximately 11:50 a.m., Robert Rigg struck a public bus while driving his vehicle. (ECF No. 97 at 2.) After striking the bus, Mr. Rigg did not remain at the scene. Although he stopped momentarily and was confronted by witnesses, Mr. Rigg drove away quickly and continued westbound on West Alameda Avenue towards the City of Lakewood. (*Id*.) At 11:56 a.m., the City of Lakewood Police Department dispatch unit was notified that an officer was following a vehicle traveling westbound in eastbound lanes that had potentially been involved in a hit and run. (*Id*.) Dispatch was notified that the vehicle, which was identified as a red 1980s Mustang coupe, refused to yield. (*Id*. at 3.) At 11:58 a.m., City of Lakewood Police Agent Robert Albrets, responding to the scene, placed his police vehicle in a position which prevented the Mustang from proceeding. (*Id*.) Once it had stopped, Agent Albrets[1] exited his vehicle and went to the passenger side window of the Mustang, where he observed Mr. Rigg wearing his seatbelt, with his left hand on the steering wheel. (*Id*. at 3-4.) Additional police responded to Mr. Rigg's vehicle and, according to Plaintiff, "Lakewood Police Officers observed that Robert Rigg was unresponsive, incoherent, confused, dazed, unable to

---

[1] This Order refers to "Agent" Albrets as such because that is manner in which the parties refer to him.

3

move, and sweating profusely, so much so that his clothes and car seat were soaking wet." (*Id*. at 4.)

Police officers ordered Mr. Rigg to get out of the car, and he did not respond. (*Id*.) Agent Albrets and Detective Storrs opened the driver's side door of the Mustang and pulled Mr. Rigg out of the car. (*Id*.) Agent Albrets noted that Mr. Rigg was hot and extremely sweaty. (*Id*.) When the officers attempted to handcuff Mr. Rigg, he pulled away briefly. (*Id*.) Mr. Rigg was searched, and a small bottle with then unidentified white pills and a worn off label was found in his pocket. (*Id*. at 5.) These pills were later determined to be nitroglycerin medication, prescribed for Mr. Rigg. (*Id*.) It is undisputed by the parties that "[d]ue to his erratic driving, likely involvement in a hit and run accident, lack of response to presence and commands and physical symptoms, Agent Albrets suspected Mr. Rigg was under the influence of an unknown drug." (*Id*.) Mr. Rigg was placed in the back seat of the police vehicle, and he pulled his legs into the car. (*Id*.) At 12:01 hours, a request was made for the City of Lakewood Dispatch ("Dispatch") to have a drug recognition agent meet Agent Albrets and Mr. Rigg in the booking area of the Lakewood Police Department. (*Id*. at 6.) At 12:03 p.m., Agent Albrets reported that he was transporting Mr. Rigg to the City of Lakewood Police Station. (*Id*.)

Plaintiff contends that while en route to the police station, Agent Albrets observed Mr. Rigg drooling and breathing heavily, looking "like he was sorta passed out or something," and was concerned that Mr. Rigg was experiencing excited delirium. (*Id*., ECF No. 98 at 44.) Accordingly, he requested that medical personnel be called. At 12:06 hours, Dispatch spoke with West Metro Fire Department ("West Metro") and asked that paramedics meet Agent Albrets and Mr. Rigg at the City of Lakewood Police Department booking area. (*Id*.) According

to Plaintiff, West Metro was also told that Mr. Rigg was complaining of shortness of breath and chest pains. (*Id*.)

After West Metro was on its way to the police station, Sergeant Collett radioed Agent Albrets and asked Albrets to call him on a private line. (ECF No. 97 at 7.) Sergeant Collett instructed Agent Albrets to take Mr. Rigg directly to St. Anthony's Hospital ("St. Anthony's"). (*Id*.) Agent Albrets pulled into the booking area[2] at the Lakewood Police Station, turned around, and left the station for St. Anthony's. (*Id*.) Sergeant Collett instructed Dispatch to cancel the request to West Metro, which was approximately one mile away from the police station, and confirmed that Agent Albrets would take Mr. Rigg to St. Anthony's, approximately a ten minute drive from the police station. (*Id*.) At 12:07 p.m., Agent Albrets told Dispatch that he was heading to St. Anthony's. (*Id*. at 8.)

At 12:08 p.m., Agent Albrets told Dispatch that Mr. Rigg was "not looking too good," and requested permission to "run hot" with lights and sirens to St. Anthony's. (*Id*.) This request was denied according to Plaintiff, and Sergeant Collett instructed Agent Albrets to pull over and wait for the paramedics. (*Id*.) At 12:09 p.m., Dispatch called West Metro and asked them to meet Agent Albrets at Bayaud and Wadsworth, and they re-routed. (*Id*.) At 12:11, Agent Albrets informed Dispatch to tell the paramedics that he was stopping at a parking lot at 98 Wadsworth Boulevard. (*Id*.) At 12:11, Dispatch asked West Metro for an estimated time of arrival, and West Metro said four minutes. (*Id*.) While Agent Albrets was waiting for the ambulance, other police personnel came upon the scene, removed Mr. Rigg from Agent Albrets' vehicle, and began performing CPR on Mr. Rigg. (ECF No. 75-1 at 8.) At 12:13, Dispatch was informed that Mr. Rigg was unresponsive. (ECF No. 97 at 9.) At 12:15 p.m., West Metro

---

[2] At 12:05 p.m., according to the Lakewood Police Department Evidence Report, all of Mr. Rigg's possessions were received into booking at the City of Lakewood Police Station. (ECF No. 100.) This is somewhat inconsistent with the overall timeline, but suggests that Mr. Rigg reached the police station around this time.

arrived at the parking lot, and began to attempt to resuscitate Mr. Rigg. (*Id*.) Mr. Rigg was transported to St. Anthony's by West Metro Medic 7, and was pronounced deceased at 12:50 p.m. (*Id*.)

An autopsy was performed by the Office of the Medical Examiner of the City and County of Denver, and the autopsy diagnoses were: (1) a history of diabetes; (2) severe atherosclerotic cardiovascular disease; (3) coronary artery stents, all main epicardial coronaries; (4) residual atherosclerosis; (5) possible acute thrombus, circumflex stent; (6) remote myocardial infarct, and; (7) cardiomegaly. (*Id*.)

Plaintiff's medical expert Dr. Gerald Burma opines that "had Mr. Rigg received prompt medical attention [not later than 12:11 p.m.] from Emergency Medical Rescue personnel, I believe with a reasonable degree of medical certainty that Mr. Rigg's medical condition would have been stabilized…[and] he would have had a successful recovery." (*Id*. at 10.)

Plaintiff also retained a "police procedures expert," D.P. Van Blaricom. He opines as follows:

> Based on my training, experience and a careful evaluation of the totality of circumstances in this matter, it is my considered professional opinion that decedent was constructively and unreasonably denied timely medical assistance.

Mr. Van Blaricom based this opinion of the "following information from the record." Included in the referenced information are the following statements:

> c.   An adequately trained and experienced police officer would have and LPD officers should have immediately recognized that decedent was experiencing a medical emergency…
>
> d.   …LPD officers should have called for medics or otherwise obtained medical attention for decedent as soon as possible and without the unnecessary delay described herein…
>                    . . .            . . .

6

      g.      Had LPD officers been adequately trained, they should have recognized that decedent needed immediate medical attention;

      h.      Had LPD officers been adequately supervised, Sergeant Collett should have ordered them to obtain immediate medical attention for decedent;

. . .    . . .

      k.      The facts of this incident demonstrate LPD's custom policy and practice of:

          1)      Failure to adequately train officers in recognizing and responding to medical emergencies;

          2)      Failure to adequately supervise officers in recognizing and responding to medical emergencies.

(ECF No. 97 at 17-19.)

### III. ANALYSIS

What remains of Plaintiff's claims after Judge Jackson's order and the filing of the amended complaint is a single claim for relief alleging a violation of 42 U.S.C. § 1983 by the City of Lakewood. Although Mr. Rigg's death is alleged in the amended complaint to be the product of a multitude of policy, custom and practice deficiencies (ECF No. 29 at 7-8), Plaintiff is essentially claiming that Mr. Rigg's right to due process was violated by Defendant's deliberate indifference to his medical needs, evidenced by a failure to train and supervise police personnel appropriately in terms of dealing with medical emergencies.[3]

In the Motion, Defendant argues that "Plaintiff has failed to establish any underlying constitutional violation, the existence of a municipal custom, practice or policy or any direct causal link between said custom, practice or policy and the violation alleged." (ECF No. 76 at

---

[3] In terms of the policies, customs and practices of the City of Lakewood, the amended complaint alleges specific and affirmative policies of commission such as a policy of "ignoring the medical needs of detainees" or "putting the wants and conveniences of the police department ahead of the medical needs of detainees." With respect to what I have dubbed policies of commission, Plaintiff has come forward with no evidence of the existence of such policies and not even her expert opines as such. Accordingly, they will not be separately addressed further herein, and the focus will be on the purported omissions of the City of Lakewood—a failure to train and supervise.

2.) Defendants further argue that there are no facts establishing deliberate conduct by the municipality, and that the four-minute delay alleged is *de minimus* and irrelevant. (*Id.*)

In order to prevail on its constitutional claim against the municipal Defendant, Plaintiff must establish first that there was a constitutional violation committed by a municipal employer, and second, that a municipal policy or practice was the "moving force behind the deprivation." *Myers v. Bd. Of Cnty. Comm'rs of Oklahoma City*, 151 F.3d 1313, 1316 (10th Cir. 1998).[4] In order to establish the latter element, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct and causal link between the custom or policy and the violation alleged. *Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996). There are five principal ways a plaintiff may establish the existence of a municipal policy or custom: (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice; (3) the decisions of employees with final policymaking authority; (4) the ratification by final policymakers of the decisions of subordinates; (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010).

Plaintiff essentially relies on the fifth way of establishing the existence of a municipal policy or custom—failure to train or supervise—arguing that "if the attending officers had been properly trained, Mr. Rigg would have received the medical attention necessary to keep him alive in less than five minutes from the time of the initial stop and, with proper training, Agent Albrets would not have driven Mr. Rigg away from the police station and medical help." (ECF

---

[4] The Tenth Circuit has recently clarified that this test can be characterized as comprising three distinct elements: (1) official policy or custom, (2) causation, and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

8

No. 97 at 19.)[5]  To support this position, Plaintiff offers evidence (principally in the form of an expert opinion by a medical doctor) that had Mr. Rigg received prompt attention, no later than 12:11 p.m., he would have survived.

The difficulty with Plaintiff's argument is that there is no meaningful evidence as to what the custom or policy of the City of Lakewood was in these (or any) circumstances, or how specifically there was a failure to train its employees.  Instead, Plaintiff posits that this single incident establishes a custom or policy of inadequate training and supervision.  (*See, e.g.*, ECF No. 97 at 18 ("The facts of this incident demonstrate LPD's custom policy and practice of [f]ailure to adequately train…").)  The case law, however, indicates that this is not enough.

In *Allen v. Muskogee*, the Tenth Circuit held that a "showing of specific incidents which establish a pattern of constitutional violations is not necessary to put the City on Notice that its training program is inadequate.  Rather, evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, is sufficient to trigger municipal liability." 119 F.3d 837, 841-42 (10th Cir. 1997).  The quoted language is included word-for-word in Plaintiff's Response, and yet, Plaintiff seemingly failed to interpret it correctly.  Plaintiff fails to note that, in addition to the single violation, *a showing that a municipality has failed to train its employees* must be made.  Plaintiff has presented no such evidence.[6]  Instead,

---

[5] With respect to coming forward with evidence of municipal customs, policies or practices, Plaintiff, in addition to the matters discussed above, submitted a declaration of counsel alleging that Defendant had inappropriately resisted various discovery with respect to its customs and policies and that a motion to compel had been filed. (ECF No. 99.)  Subsequently, the motion to compel was granted in part and denied in part. (ECF No. 102.)  After the additional discovery, Plaintiff neither filed nor requested to file any supplemental pleadings or exhibits with respect to Defendant's customs, policies or practices, and thus stands on the record made in response to the Motion.

[6] *Allen v. Muskogee* is clearly distinguishable from this case.  In that case, the Tenth Circuit found there to be evidence in the record to support "an inference that the City trained its officers to leave cover and approach armed suicidal persons to try to disarm them." 119 F.3d at 843.  The Tenth Circuit was clear that although evidence of more than one incident is not necessary to establish a policy of inadequate training causing a constitutional deprivation, the case law does "require evidence in addition to the occurrence of a single incident."  In *Allen*, the plaintiff did "not rely solely on proof of the single incident to support an inference that the incident was caused by

she argues in a circular manner that since Mr. Rigg died in this incident, there must have been a failure to train or supervise since he would not have died had the police been properly trained and supervised. In short, she relies on the single incident described herein as evidence of a failure to train, and collapses the Tenth Circuit's requirements. In order to sue the City of Lakewood under the law as set forth in *Allen v. Muskogee*, Plaintiff needs something more than that, and she has not shown it.

Plaintiff also purports to rely upon *City of Canton v. Ohio*. There, however, "[e]vidence was presented that indicated that, pursuant to a municipal regulation, shift commanders were authorized to determine, in their sole discretion, whether a detainee required medical care." 489 U.S. 378, 381-82 (1989). In that case, as opposed to in this one, an *actual regulation* was put forth, which independently established the custom or policy at issue. Further, *City of Canton* states:

> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program….plainly, adequately trained offers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Id*. at 390-91. At most here, Plaintiff may theoretically have been able to demonstrate that Agent Albrets or Sergeant Collett made a mistake (though no evidence of deliberate indifference, as explained further below, on the part of either of them, or anyone, is demonstrated by the evidence)—but she needs more than the events of September 9, 2009 to establish that any such mistakes were the result of a failure to train on the part of the City of Lakewood.

---

inadequate training and that the inadequate training was city policy." *Id*. at 844. In *Allen*, the plaintiff presented direct evidence of the municipality's actual training, including two affidavits of law enforcement officers that the individual officers acted in accordance with their training. And an expert opinion was rendered based on the actual training received. Here, any opinion regarding inadequacy of training stems from evidence not of the actual training received, or even of a lack thereof, but simply from the actual incident itself.

To attempt to fill this gap, Plaintiff relies upon Mr. Van Blaricom, her expert. Plaintiff attempts to use the report of this expert to generate an opinion which creates an issue of fact sufficient to defeat the Motion. The attempt fails.

First, the report—and only the report itself, devoid of deposition testimony or other evidence, was submitted in connection with Mr. Van Blaricom's opinion—does not actually contain an opinion that there was inadequate training or supervision. Instead, the opinion is that Mr. Rigg was denied timely medical assistance. (ECF No. 97 at 16, ECF No. 100 at Exhibit 6 for full report.) As a *basis* for that opinion, Mr. Van Blaricom states that he was mindful of "information from the record." That information is as quoted earlier, and amounts to nothing more than a conclusion that the facts demonstrate a custom, policy or practice of failing to train and to supervise.

Second, even if I were to consider the recitation of the expert to be his opinion, it would not be competent evidence to establish a lack of training or supervision. As presented to the Court, Mr. Van Blaricom's purported opinion is nothing more than sheer *ipse dixit* of the expert. *See General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). There is nothing indicating or explaining any basis of this "opinion" much less a basis flowing from specialized or scientific knowledge. There is no claim that the opinion is based on knowledge—personal, specialized, or acquired through the litigation—of City of Lakewood's actual policies and procedures. There is no claim that the opinion is based on any such knowledge as to the particulars of the training received by Agent Albrets, Sergeant Collett, or any other officer involved with Mr. Rigg.[7] There

---

[7] The Court has reviewed the full record, including the excerpts of the deposition of Agent Albrets that were provided. Though Plaintiff does not cite or refer to it in her briefing, in that deposition, Agent Albrets was asked about *some* of the training he received, and other than clarifying that some training was provided, including training in CPR and identifying symptoms of a heart attack, the exact parameters of what all training included, omitted, and prescribed for officers of the City of Lakewood was not revealed by the excerpts. And Agent Albrets made clear that some document shown to him, which was not provided to the Court—did *not* reference all the training he received. (ECF No. 98-1, Albrets Dep., at internal pp. 41, 50, 58.)

is certainly nothing comparable to the opinion that the city's training "was out of synch with the entire United States in terms of what police are being trained to do." 119 F.3d at 843. *See also Whitewater v. Goss*, 192 F. App'x 794, 799 (10th Cir. 2006) (contrasting facts of case with situation presented in *Allen*); *Carr v. Castle*, 337 F.3d 1221, 1230 (10th Cir. 2003) (same). There is no identification of the specifics of the City of Lakewood's actual training or the training received by officers, which would provide a basis from which a comparable opinion could be made. There is simply nothing but declaration. The Court is not required to admit such *ipse dixit* as competent evidence at trial. *Id*. And I do not find it to be competent evidence to defeat the Motion now before me.

Third, and finally, the purported expert opinion improperly conflates the requirement that there be a single incident coupled with a failure to train. If counsel in his pleadings or an expert in his report may simply state that the outcome of a single incident alone (Mr. Rigg's death) establishes the probability of a failure to train or supervise (as opposed to a mistake or failure to follow training), then the legal requirement of a single incident coupled with a failure to train is essentially eviscerated. Even were I to accept the notion that police inaction or action may be so widespread or extreme in a single case as to suggest a lack of training, I could not find a basis for such an inferential leap in this case where Agent Albrets called for an ambulance, Sergeant Collett directed that Mr. Rigg be taken to the hospital, and later police recalled the ambulance to intercept Agent Albrets en route. Simply put, based on the single incident alone, these facts do not permit a reasonable jury to draw such an inference, and a mere declaration of an expert does not alter the conclusion.

Even had Plaintiff established a lack of training by the City of Lakewood, that still would not have solved the evidentiary deficiencies in this case. *City of Canton* made clear that "[o]nly

where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom'…Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality…can a city be liable for such a failure under § 1983." *Id*. at 389. Perhaps a wholesale failure to provide any medical training to police officers would meet this standard. But Plaintiff's failure to provide the Court with any particulars as to the actual training conducted or omitted by the City of Lakewood prevents the Court from reaching such a conclusion. Plaintiff has not pointed to any other evidence of deliberate indifference. At most, Plaintiff may be able to demonstrate that a different course of action would have provided Mr. Rigg with medical care minutes sooner, which may have saved his life. This is far from demonstrating deliberate indifference on the part of the City of Lakewood. And it says nothing about whether the City of Lakewood's actual training reflects deliberate indifference. The events of September 9, 2009 are not enough to establish either deliberate indifference or a custom or policy on the part of the City of Lakewood, and therefore Plaintiff's claim fails in both respects.

To be clear, the Court does not rely in any way on Defendant's *de minimus* argument in ruling against Plaintiff in this matter. Even if there were some *de minimus* delay concept in a medical treatment case which paralleled *de minimus* force in an excessive force case, Plaintiff's medical expert's opinion that Mr. Rigg would have been saved had he been treated sooner would preclude my determining the delay to be legally *de minimus*. Nonetheless, the remaining issues raised by Defendant and discussed above are adequate for resolution of the Motion.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion for Summary Judgment (ECF No. 76) is GRANTED;

2. The Clerk shall enter judgment in favor of Defendant on all claims;

3. All other pending motions in this matter are hereby DENIED AS MOOT; and

4. All pending dates and deadlines are hereby VACATED.

DATED this 2nd day of May, 2014.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge